## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ZULEYKA RIVERA,

    **Plaintiff,**

    **v.**

                          **Civil No. 20-1350 (ADC)**

KRESS STORES, P.R., INC., ET AL,

    **Defendants.**

## OPINION AND ORDER

Before the Court is co-defendant Mark Berezdivin's ("Mr. Berezdivin") motion to dismiss at **ECF No. 24** and co-defendant Kress Stores PR, Inc.'s ("Kress") motion to dismiss at **ECF No. 25**. Plaintiff Zuleyka Rivera ("plaintiff") filed an omnibus response at **ECF No. 26**. Defendants replied and plaintiff sur-replied. **ECF Nos. 33, 34, 40, 41**.

For the reasons stated herein, the motions to dismiss at **ECF No. 25** is hereby **GRANTED**. The motion at **ECF No. 24** is thus **MOOT**; and pending related pleadings are **NOTED**.

## I.    BACKGROUND

### A. The complaint

On July 17, 2020, plaintiff, a United States citizen domiciled in Florida, filed a complaint for breach of contract, injunctive, and other reliefs against Kress, Mr. Berezdivin, and Insurers A and B ("defendants"), citizens of the United States and domiciled in Puerto Rico, under the Court's jurisdiction over diverse parties. **ECF No. 1** at 1-2.

According to the complaint, on August 5, 2009, the parties executed a Professional Services Agreement ("agreement") whereby plaintiff granted defendants exclusive rights to use plaintiff's name, title (*i.e.* Miss Universe 2006), and image for the development of clothing and fragrance brand for an annual compensation of $112,500. *Id* at 3. Two years into the term of the agreement, the parties agreed to extend the agreement for an additional year, up to August 2012. *Id* at 4. Thereon, the parties continued doing business under the agreement via verbal, mutual consent to extend the termination period. Up until 2018, defendants paid the $112,500-agreed upon- annual compensation to plaintiff. *Id*. However, defendants have not paid plaintiff's annual compensation for the September 2018-August 2019 period and, except for a partial payment made on May 2020, the period beginning on August 2019 to present. *Id*. However, defendants continue to "sell, promote, and advertise merchandise with plaintiff's name, image, and likeness." *Id*.

Plaintiff denied defendants' May 23, 2019 offer to cut plaintiff's compensation to a total of $56,250. *Id* at 5. On March 6, 2020, plaintiff's counsel sent an email stating that defendants owed plaintiff no less than $189,000 and requested defendants to cease and desist from exploiting plaintiff's name and image. According to the complaint, defendants' counsel "acknowledged" co-defendant Kress' debt to plaintiff. *Id*. Defendants represented that they would continue to pay plaintiff under a "payment plan" and that they no longer had inventory or merchandise. *Id*. On or around May 2020, Kress payed plaintiff $20,000 under the purported payment plan. *Id* at 6.

Plaintiff alleges that defendants' local and online stores are currently fully stocked.[1] On May 26, 2020, plaintiff sent a text message to Mr. Berezdivin asking for payment. **ECF No. 2-5**. But co-defendant Berezdivin replied not being able to comply with his financial obligations and stating uncertainty as to the future of his businesses.

Pursuant to these allegations, plaintiff claims damages against defendants for breach of contract, damages and injunctive relief for violations of plaintiff's "rights of publicity" under Puerto Rico Right of Publicity Act, PR Laws Ann., tit. 32 § 3152, and alternatively, damages for unjust enrichment or tort damages under Puerto Rico law. **ECF No. 1** at 9-15.

**B. Temporary order enjoining defendants and stipulation**

On July 22, 2020, the Court granted plaintiff's request for a temporary order enjoining defendants from, among other things, "(a) manufacturing, selling, offering for sale, advertising, promoting, displaying or otherwise disposing of any product that is in their possession[…]" **ECF No. 9**. The Court also ordered an evidentiary hearing regarding plaintiff's request for preliminary injunctive relief to be held on August 13, 2020. *Id*. On August 6, 2020, the parties filed a joint motion informing that a "Stipulation" was reached. **ECF No. 22**. Accordingly, the parties requested "a ruling vacating the August 13th, 2020 hearing." *Id*. Pursuant to the "Stipulation" submitted at **ECF No. 21**, the parties:

> agreed to the following Joint Stipulation, which conclusively moots the issuance of a preliminary injunction and displaces the need of the corresponding security: 1. Effective immediately and up until the

---

[1] Plaintiff submitted third-party statements claiming that they visited defendants' Puerto Rico and online stores and witnessed that merchandise and products marketed or labeled "Zuleyka Rivera" were readily available for purchase. They also saw posters and other promotions containing plaintiff's name and image. **ECF No. 1** at 6; **ECF Nos. 1-8, 1-9, 1-10, 1-11, 1-12, 1-13.**

Honorable Court enters judgment or, alternatively, all the parties to the case collectively decide to leave this Joint Stipulation without effect, KRESS, including its directors, officers, agents, employees, subsidiaries or related entities, consents and agrees to: a. Cease or discontinue manufacturing, selling, offering for sale, advertising, promoting, displaying or otherwise dispose of any product that is in their possession, which bears plaintiff's name, image and likeness.

**ECF No. 21** at 1-2 (emphasis added).

The evidentiary hearing was vacated in light of the parties' agreement. **ECF No. 23**. On October 22, 2020, Kress filed a motion requesting an order authorizing the sale and marketing of merchandise related to plaintiff during the holidays and requested a hearing to discuss such request. **ECF Nos. 30, 31**. The Court ordered plaintiff to state its position. **ECF No. 32**. Plaintiff filed a motion in compliance at **ECF No. 37** basically stating that she opposed Kress' request and asserted that she was "not interested in having defendant Kress market and/or sell any merchandise (including clothes and fragrances) associated with plaintiff's image, name or title." Id at 2. Because Kress' request went against the clear terms of the stipulation, the Court was left with no choice but to deny Kress' requests at **ECF Nos. 30, 31.**

### C. Mr. Berezdivin's motion to dismiss

Mr. Berezdivin moves for dismissal of the complaint and argues that pursuant to the exhibits attached to the complaint, it is evident that "at all relevant times [he was] acting as an officer of Kress and, consequently, no liability may be attached against him." **ECF No. 24** at 1. He then makes reference to plaintiff's allegations against him and propounds that because "corporations such as Kress are legal entities separate from their officers, directors and shareholders," the Court must conclude that "plaintiff has no claim actionable against him for

collecting corporate debt." *See Id* at 3-4 (citing *Colón v. Blades*, 757 F.Supp.2d 107, 109 (D.P.R. 2010) (But for the extreme situation in which there is competent proof to warrant piercing the corporate veil, corporate directors, officers, and shareholders are not liable for the debts of a corporation)). Moreover, he emphasizes that the contractual relationship and "the ultimate issue as to the use of plaintiff's 'name, image, and the likeness' and the corresponding economic compensation is exclusively between her and Kress." *Id*.

### D. Kress' motion to dismiss

Kress filed a motion to dismiss pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a). **ECF No. 25**. It argues that the case against it hinges on a contract executed by Kress and plaintiff. Specifically, under the contract the parties entered into a "business relationship… in 2009, granting [Kress] the right to use [plaintiff]'s image in consideration of a certain compensation." *Id* at 2. However, Kress argues that the case was improperly brought before this District Court due to the fact that "the contract includes a forum-selection clause, whereby plaintiff voluntarily agreed to submit all controversies or conflicts to the jurisdiction of the [Puerto Rico] state courts." *Id*. Dismissal is proper under the contract's forum selection clause, Kress argues, even if the Court assumes that the contract terminated prior to the filing of the instant complaint. *Id*.

## II.    LEGAL STANDARD

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [Plaintiff's] claims across the line from

conceivable to plausible." *Id.* at 570. Therefore, to preclude dismissal, the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *See Id.* at 555.

At the motion to dismiss stage, courts accept all well-pled factual allegations as true, and draw all reasonable inferences in plaintiff's favor. *Parker v. Hurley*, 514 F.3d 87, 90 (1st Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]–'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) ("The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."). Courts need not credit complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Applying these principles, particularly the plausibility analysis, is a context-specific task that requires courts to use their judicial experience and common sense. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555-56).

"To assess the adequacy of the complaint, our circuit has instructed that the review should be handled like this: first, isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,] then take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Zenón v. Guzmán*, 924 F.3d 611, 616 (1st Cir. 2019) (internal quotation marks and citations

omitted). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Finally, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Courts must adjudicate motions under 28 U.S.C. § 1404(a) "according to an individualized, case-by-case consideration of convenience and fairness." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (internal quotation marks omitted.)

## III.   DISCUSSION

### A. The mandatory nature of the forum selection clause

Kress' motion to dismiss is premised on a single argument: that the underlying contract includes a forum selection clause whereupon plaintiff agreed to litigate any claims under the contract in the Puerto Rico Court of First Instance. Because the forum selection clause is mandatory, Kress posits, this forum is improper and thus dismissal is warranted. **ECF No. 25.** In addition, Kress argues that the forum selection clause also contains the word "any" in connection with the nature of the claims that fall within the clauses' scope and reach. Ultimately, Kress argues, the language of the forum-selection clause is clear and unambiguous as to the 'mandatory' nature of the clause and the same was included in the agreement with the sole

purpose of establishing that the parties would resolve any conflicts or controversies regarding the agreement in state court." *Id* at 5.

Plaintiff, on the other hand, argues that the forum selection clause is clearly of a permissive nature. **ECF No. 26** at 10-11. Highlighting the fact that the forum selection clause lacks typical mandatory terms such as "shall," plaintiff builds her argument that nothing in the language of the clause prohibit litigation in this Court. Id at 10. Plaintiff also argues that the parties' intention in executing the forum selection clause was simply to consent to personal jurisdiction in the Puerto Rico Court of First Instance. Id at 11. In plaintiff's view, that was precisely the point in including the words "voluntarily submit." Id at 12.

Finally, Kress dismisses plaintiff's purported intention in including the forum selection clause. **ECF No. 33**. To wit, Kress denies that the parties' intention in drafting and including such a forum selection clause would be limited to the purposes of "conferring jurisdiction upon the [Puerto Rico Court] of First Instance." Id at 3-4. Moreover, Kress pressed forward with its "mandatory" argument and explained that the fact of the matter was "that the parties did not agree to any other jurisdiction other than the PR state court and that the state court was the mandatory forum for resolving any controversies or conflicts between the parties." Id at 4.

After analyzing the totality of the docket and the case law cited by the parties, the Court finds that some of Kress' arguments for dismissal are not without merit.

"Under federal law,[2] the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." *Rivera v. Centro Médico de Turabo, Inc.,* 575 F.3d 10, 17 (1st Cir.2009). As to the former, "[p]ermissive forum selection clauses... authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere." *Id*. On the other hand, a "mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum. *Id.* (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (3d ed.1998)) (internal quotation marks omitted).

Accordingly, the Court must first analyze whether the clause at hand prohibits litigation outside the designated forum. The clause under review reads as follow:

> this agreement shall be interpreted in accordance with the laws of the Commonwealth of Puerto Rico and, **in case of any controversies or conflicts in relation to this agreement,** the parties agree to voluntarily submit to the jurisdiction of the Court of First Instance, Superior Court of San Juan. **ECF No. 1-5** (emphasis added).

Clearly, the clause under review has both a choice of law and forum selection disposition integrated in the same paragraph. The Court first notes that typical mandatory terms such as "shall," was included only in the choice of law portion but not in with regard to the forum selection part of the clause. *See Claudio-De León,* 775 F.3d at 46-47; *Silva,* 239 F.3d at 388

---

[2] "'[T]here is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum selection clauses.' *Rivera,* 575 F.3d at 16-17 (quoting *Silva v. Encyclopedia Britannica Inc.,* 239 F.3d 385, 387 n.1 (1st Cir. 2001) (noting that the Puerto Rico Supreme Court has adopted federal jurisprudence regarding the general enforceability of forum selection clauses)). Thus, federal common law guides the Court's analysis." *Bautista Cayman Asset Co. v. Maeso-Ensenat,* 16-2182 (ADC), 2017 WL 1247879, at *1 (D.P.R. Mar. 30, 2017).

(interpreting forum selection clauses with mandatory terms such as "shall"). However, the lack of such specific words, is not dispositive and does not preclude a finding that the parties agreed to a mandatory forum selection clause. *See Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, n.5 (1st Cir. 2009)("we reject appellant's argument that the absence of 'typical mandatory terms' such as 'shall,' 'exclusive,' 'only,' or 'must' requires a contrary result); *see generally Summit Packaging Sys., Inc. v. Kenyon & Kenyon,* 273 F.3d 9, 13 (1st Cir. 2001) (holding that term in contract providing that parties "will submit" their dispute to a specified forum implied the exclusion of all other forums).

Plaintiff heavily relies in *Autoridad de Energía Eléctrica de Puerto Rico v. Ericsson Inc.*, 201 F.3d 15, (1st Cir. 2000), and sustains it "validates the permissive character of the forum clause at issue in this case and **guides this Court's holding**." **ECF No. 26** at 11 (emphasis added). Accordingly, the Court will analyze the forum selection clause agreed upon by plaintiff in light of the facts and holding in *Ericsson*. In that case, the forum selection clause was construed by the First Circuit as a conferral of personal jurisdiction by consent but "not a negative exclusion of jurisdiction in other courts." *Id* at 18-19. The First Circuit's determination was of course based on the language of the forum selection clause there under review: "[t]his contract will be governed and interpreted pursuant to the Laws of the Commonwealth of Puerto Rico and the parties agree to submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico." Id at 18. Notably, the *Ericsson* clause does not indicate that the parties' submittal to the Puerto Rico state court jurisdiction would be triggered or activated by a specific event or occurrence. Rather, the parties agreed without more to submit to the jurisdiction of the state court. The First

Circuit explained that consent to personal jurisdiction was a legitimate interest of the parties in order to potentially avoid any "possible litigation on personal jurisdictional grounds." Id at 19. After all, as the *Ericsson* Court pointed out, "consent to personal jurisdiction is of value especially with respect to defendants that are incorporated and have their principal place of business abroad." Id (quoting *McDermott Intern., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1206 (5th Cir. 1991)).

However, contrary to the text of the forum selection clause in *Ericsson*, here, the parties agreed to different terms: "**in case of any controversies or conflicts in relation to this agreement,** the parties agree to voluntarily submit to the jurisdiction of the Court of First Instance, Superior Court of San Juan." **ECF No. 1-5** (emphasis added). Notably, the clause in this case is composed of two phrases. While true that the second phrase is nearly identical to the clause in *Ericsson*, the first phrase, "in case of any controversies or conflicts in relation to this agreement," was not included in *Ericsson's* forum selection clause and, thus, not interpreted by the First Circuit. Accordingly, the Court must evaluate this addition in order to determine the binding nature the clause as a whole.

By stating "in case of any controversies or conflicts in relation to this agreement," in this Court's view, the parties drastically changed the nature and effect of the clause in comparison to the *Ericsson* clause. Specifically, the parties' agreement to submit to the state court jurisdiction is predicated on a specific event, in "any" "controvers[y] or conflict[]" "in relation to th[e] agreement." Id. In other words, the clause here under review is not just a voluntary submittal to the jurisdiction drafted for purposes of avoiding potential challenges to personal jurisdiction.

Instead, the clause at bar was specifically designed to bind the parties in case of any controversy related to the agreement. In such cases of controversies under the agreement, the parties chose to be bound to state court jurisdiction for a resolution. By adding that state court jurisdiction would attach in case of "any" "controversy," the parties clearly drafted a clause that went beyond the language that would constitute a mere consent to personal jurisdictional.

In *Silva v. Ency. Britannica Inc.*, 239 F.3d 385 (1st Cir. 2001) the First Circuit determined that the forum selection clause included by the parties in the agreement was in fact mandatory. The clause in *Silva* read: "[t]his agreement shall be governed and construed by the laws of the State of Illinois **and all actions involving this agreement must be brought in the State of Illinois**." *Silva v. Ency. Britannica Inc.*, 239 F.3d at 386 (emphasis added). Now, even though the clause in this case does not include the term "must" included in *Silva,* it does have a parallel purpose,[3] namely that any claims between the parties related to the agreement be submitted to the jurisdiction of the selected forum. Here, the phrase "the parties agree to voluntarily submit" is immediately preceded by "in case of any controversies or conflicts in relation to this agreement." The forum selection clause at bar cannot be substantially differentiated from the clause in *Silva* in this particular manner, both clearly state that the parties agree to submit to the selected jurisdiction any claims related to the agreement. To read clause agreed upon by the

---

[3] As discussed before, the fact that the clause lacks classic mandatory terms such as "shall" or "must" does not automatically turn a clause into permissive. *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, n.5 (1st Cir. 2009)("we reject appellant's argument that the absence of 'typical mandatory terms' such as 'shall,' 'exclusive,' 'only,' or 'must' requires a contrary result).

parties in this case otherwise is to choose form over substance considering that the intent behind the specific language is clear.

Considering that there is no "general rule for forum-selection clauses[,]" rather, Courts "base[ ] [their] conclusion on the specific language of the contract at issue[,]" *Silva*, 239 F.3d at 388, the Court hereby finds that the forum selection clause at hand is mandatory as it forces the party seeking relief under or related to the terms and conditions of the agreement to submit "any" such "controversies or conflicts" to the state court's jurisdiction.

The clause would otherwise make no sense as personal jurisdiction would not be a problem in this case considering that the agreement was executed in Puerto Rico, the in-store business agreed upon in the agreement would be conducted in Puerto Rico, the evidence of the alleged improper use of plaintiffs' image and likeness was obtained from stores in Puerto Rico, and the only corporate entity executing the agreement was incorporated in and does business in Puerto Rico. *See* **ECF No. 1** at 1-3, 7-9. Unlike in *Ericsson*, here, there was no tangible benefit whatsoever in executing a mere consent to personal jurisdiction between the parties in this case. The only interpretation that would make sense and give any relevance to the clause is the one holding that the parties voluntarily agreed to file any claims related to the agreement only in the Puerto Rico Court of First Instance.

Finally, although not as specific as the clause in *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 14 (1st Cir. 2009),[4] the parties did define the scope of the forum selection clause, which

---

[4] Plaintiff in *Rivera* inserted a list of the claims that he agreed to file exclusively in Puerto Rico state court (*e.g.* "physical, emotional or economic damages have been caused to me"). *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d at 14.

is the second step in the analysis in determining whether dismissal is proper, according to
*Claudio*, 775 F.3d at 47. By including "any controversies or conflicts" the parties agreed to submit
a wide array of claims to the state court jurisdiction. A complaint for injunctive relief and
payment under the terms and conditions of the agreement, such as the instant action, certainly
falls squarely within the scope of the form selection clause. Notably, plaintiff did not challenge
the scope of the forum selection clause as encompassing the claims she asserted in the instant
complaint.

Finally, having determined that the clause is mandatory in nature and that plaintiff's
claims fall well within its scope, the Court should also evaluate "whether there is some reason
the presumption of enforceability should not apply." *Claudio*, 775 F.3d at 48 (quoting *Rafael
Rodríguez Barril, Inc. v. Conbraco Industries, Inc.*, 619 F.3d 90, 93 (1st Cir. 2010)). Plaintiff failed to
proffer any reason why litigating in the Puerto Rico Court of First Instance would be too
burdensome or not effective. The "unreasonable and unjust" standard applicable to this step in
the analysis is "more demanding" than mere "convenience." *Huffington v. T.C. Grp., LLC*, 637
F.3d 18, 24 (1st Cir. 2011). To the contrary, the Puerto Rico Court of First Instance is a familiar
forum to the parties in this case. According to the allegations in the Complaint at **ECF No. 1**,
plaintiff is a Puerto Rico former Miss Universe and defendants do business on the Island. The
parties all have strong ties, if not actually rooted in Puerto Rico. "A forum selection clause is
'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is
'unreasonable' under the circumstances,' it should not be set aside." *M/S Bremen v. Zapata Off-*

*Shore Co.,* 407 U.S. 1, 10 (1972)). Accordingly, there is nothing in the record that would undermine the "presumption of enforceability" the forum selection clause carries.

**B. The effectiveness of the agreement including a forum selection clause**

Having determined that in this particular case the forum selection clause is mandatory, the Court now addresses plaintiff's argument standing for the proposition that the agreement containing the forum selection clause was terminated in 2012 and, thus, she was not bound by the forum selection clause in filing the instant Complaint. More specifically, in her response to the motion to dismiss, plaintiff argued that the contract with the forum selection clause was terminated and substituted by a verbal contract between the parties that began in 2012 and extended through, at least, 2018-2019. **ECF No. 26.**

In its reply, Kress quarrels with plaintiff's contract-termination argument. **ECF No. 29-1** at 2. Kress asserts that the allegations under which the "new" verbal contract theory is built are not rooted in the complaint and were raised improperly and without supporting evidence for the first time via plaintiff's response to the motion to dismiss. *Id* at 2.  More specifically, Kress underscores that plaintiff "admitted that the terms and conditions of the 2009 contract continued to be in effect after 2012, and that the only term that was 'edited' through 'verbal communication' between the parties was the amount of the compensation." *Id* at 3.

In plaintiff's sur-reply at **ECF No. 41**, she reiterates that her position is that the original, "written Professional Services Agreement expired as per its own terms—in August 2012 after Kress exercised its sole one-year extension—and there was no written extension or renewal thereof; and what ensued was a verbal agreement." Id at 2.  Plaintiff also points to the fact that

she "made an allegation alluding to the verbal agreement in paragraph 15 of the Verified Complaint." Id.  Thereupon, plaintiff concludes, "the clear implication is that there was no written extension or renewal of the original, written agreement." Id.

**(i) The allegations in the Complaint**

In resolving this controversy, the Court must evaluate the allegations in the complaint to determine whether, as plaintiff asserted via response at **ECF No. 26**, the agreement that included the forum selection clause was terminated or not in 2012. In the Complaint, plaintiff alleges that the action arises "out of defendants' breach of contractual duties," among other conduct related thereto. **ECF No. 1** at 3.

The underlying contract is a Professional Service Agreement ("agreement") executed by plaintiff and Kress on August 5, 2009, whereby plaintiff granted Kress "exclusive right to use plaintiff's name, beauty pageant title ('Miss Universe 2006'), and her image and likeness for the development of clothing and fragrance brand." Id at 3. Under the agreement, the parties agree to pay plaintiff $125,000.00 as "a yearly compensation." Id.[5] "After the initial period of two (2) years," the agreement's "option period" was amended to "extend[] the Agreement one (1) more year, which caused the Agreement to end on August 2012." Id at 4. The yearly compensation was set to $112,500.00. Id *see* n.5. Immediately after, plaintiff specifically alleged that:

> **Every year since then up until the year of 2018**, the DEFENDANTS have paid PLAINTIFF **the set amount of… []$112,500.00[] in the contract without editing said contract via writing, but rather via verbal communication and through the**

---

[5] The Complaint at **ECF No. 1** at 4 states that plaintiff's compensation under the 2009 written agreement was in the amount of $112,500.00. However, according to the copy of the agreement submitted by plaintiff at **ECF No. 1-5**, and plaintiff's sworn statement at **ECF No. 1-4**, the amount of compensation under the 2009 written agreement was $125,000.00, which was later reduced to $112,500.00 via the verbal agreement on September 1, 2012.

**continuous yearly payments** to PLAINTIFF**.** This entitled CODEFENDANT Kress to use PLAINTIFF'S name, image, and likeness for the manufacturing, sale, and promotion of clothes, fragrances, and other promotional items. Id at 4 (emphasis added).

With the exception of a partial payment made on 2020, "[f]or the contract year beginning in September 1, 2018 through August 31, 2019 up until the filing of this complaint, DEFENDANTS failed to make any payments while they continued to sell, promote, and advertise merchandise." Id at 4. According to plaintiff, on May 23, 2019, co-defendant Berezdivin unsuccessfully attempted to cut in half plaintiff's compensation amount from the $112,500.00 agreed upon in the agreement to $56,250.00. Id at 5.

> ### (ii) Plaintiff's Sworn Statement

Plaintiff submitted a Sworn Statement as an attachment to the Complaint. *See* **ECF No. 1-4**. Upon review of plaintiff's Sworn Statement the Court noticed a subtle yet very significant variation in plaintiff's version of the facts of this case. In her Sworn Statement, plaintiff states that:

3. On August 5, 2009, **I began my business relationship** with Kress Stores of P.R., Inc. ('Kress') when I executed a Professional Service Agreement granting Kress the exclusive right to use my name… beauty pageant title of 'Miss Universe 2006,'as well as my image and likeness for the development of a clothing and fragrance brand **for two (2) years in exchange for the amount of one-hundred twenty-five thousand dollars (\$125,000.00)**[.]

[…]

5. On September 1, 2012, **Kress and I decided to extend our agreements** and **we verbally agreed to continue the relationship with yearly compensation in the amount of one-hundred and twelve-thousand five-hundred dollars (\$112,500.00).** Said **verbal agreement** allowed Kress's commercial exploitation of

my name, image, and likeness **for a period of one year and it was renewed every year upon payment of the agreed compensation.**

6. **Kress renewed the agreement** for the following contractual years:
> September 1, 2012, to August 31, 2013
> September 1, 2013, to August 31, 2014
> September 1, 2014, to August 31, 2015
> September 1, 2015, to August 31, 2016
> September 1, 2016, to August 31, 2017
> September 1, 2017, to August 31, 2018

7. For the contract year beginning in September 1, 2018 through August 31, 2019 and up until the filing of this complaint, Kress failed to make any payments while they continued to sell, promote, and advertise merchandise with my name, image, and likeness[]. **ECF No. 1-4** at 1-2 (emphasis added).

Clearly, there is an important clarification in the Sworn Statement of plaintiff's intentions in entering into the verbal agreement with Kress. **ECF Nos. 1, 1-4**. According to plaintiff's Sworn Statement, in the written agreement executed in August 2009, plaintiff and Kress entered into a "business relationship." **ECF No. 1-4** at 1 (emphasis added). When the agreement's termination date approached, on September 1, 2012, both parties "decided to extend" the agreement by "**verbally** agree[ing] to **continue the relationship**." Id (emphasis added). "Said verbal agreement," allowed Kress to continue with the commercial "exploitation" of plaintiff's name, image and likeness for a period of one year. However, that specific contractual period of one year "**was renewed every year upon payment** of the agreed compensation." Id (emphasis added).

Under this understandings and verbal agreement, "Kress renewed the agreement" automatically from September 1, 2012 to August 31, 2018 by making the agreed upon yearly payments. Yet, plaintiff's claims evince that the agreement continued past the August 31, 2018

contractual year up until the filing of the complaint. To wit, plaintiff claims that Kress owes her money pursuant to the terms of the agreement "[f]or the **contract** year beginning in September 1, 2018 through August 31, 2019 and **up until the filing of this complaint**." Id at 2 (emphasis added). Otherwise, if the agreement was not extended and effective "up until the filing of the complaint," plaintiff would not be entitled to claim payment under the terms of the agreement as she does in the Complaint at **ECF No. 1**. Thus, according to plaintiff's arguments and allegations, the agreement was extended up to moment when she filed the instant complaint.

According to all the above, plaintiff's argument in response to Kress' motion to dismiss, purporting that her claims are "based entirely on the verbal contract that began in September of 2012," which, according to plaintiff, "contains no forum selection clause" is unavailing. **ECF No. 26**. Plaintiff tries to convince the Court that the September 2012 "verbal contract" contains virtually all the terms and condition of the written agreement except for the forum selection clause. In support, plaintiff cites First Circuit case law stating that "[the Court] must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[ ]." *See* **ECF No. 26** at 7 (quoting *Decotiis v. Whittemore*, 635 F.3d 22, 28–29 (1st Cir. 2011)). The Court does not agree with plaintiff's suggested interpretation.

First, the Court cannot find any allegations in the Complaint indicating that the verbal agreement left out the forum selection clause. In paragraph 15 of the Complaint, plaintiff asserted that from 2012 to 2018, Kress paid plaintiff "the set amount… in the contract without editing said contract via writing, but rather via verbal communication." **ECF No. 1** at 4. There is no allegation whatsoever asserting any "editing" of the agreement as to the choice of law of

forum selection clauses. Conversely, as noted before, aside from the compensation amount, the only other amendment to the agreement asserted in the Complaint is the amendment of "the option period in the Agreement" pursuant to which the parties "extended the Agreement one (1) more year." **ECF No. 1** at 4. According to plaintiff's Sworn Statement, however, this agreement was not only renewed for one year, but rather "every year." **ECF No. 1-4** at 1.

Even if the Court bit into plaintiff's argument and construed the allegations in the Complaint as clearly stating that the verbal agreement eliminated the forum selection clause, such allegations would not change the outcome because plaintiff's Sworn Statement at **ECF No. 1-4** clarifies that the verbal agreement continued and extended the written agreement, and within, the forum selection clause. While true that the Court must accept as true the allegations in the complaint and draw inferences in favor of plaintiff, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Yacubian v. U.S.*, 750 F.3d 100, 108 (1st Cir. 2014)(quoting *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 229 n. 1 (1st Cir.2013); *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000). Even though the Court does not believe that the Complaint alleges that the verbal agreement left out the forum selection clause, plaintiff's Sworn Statement made it clear that her intention in entering into the verbal agreement was simply to "continue the relationship" by simply extending the agreement on a yearly basis. **ECF No. 1-4**.

Plaintiff's arguments in the sur-reply at **ECF No. 41** are not much different from the ones included in her response at **ECF No. 26** addressed by the Court above. In any case, at **ECF No. 41** plaintiff avers her "position is that the original, written Professional Services Agreement

expired as per its own terms—in August 2012 after Kress exercised its sole one-year extension—and there was no written extension or renewal thereof; and what ensued was a verbal agreement." Id at 2. Rather, there was only a "continuation of the main object" of the written agreement. Id. Plaintiff adds, "there was no written extension or renewal of the original, written agreement." Id. However, as discussed before, these arguments are inapposite to plaintiff's Sworn Statements at **ECF No. 1-4** stating that her intention was to verbally renew the agreement every year.

## IV.   CONCLUSION

In light of all the above, the motion to dismiss at **ECF No. 25** is **GRANTED**. The case is hereby dismissed to its reassertion in the forum and jurisdiction selected by the parties: the Puerto Rico Court of First Instance. Accordingly, the motion to dismiss at **ECF No. 24** is **MOOT**; all pending motions are **NOTED**. Clerk of Court is to enter judgment dismissing the complaint.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 12th day of March 2021.

**S/ AIDA M. DELGADO-COLÓN**
**United States District Judge**